UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-20527-CR-LENARD/TURNOFF

UNITED STATES OF AMERICA,

v.

**RENE DE LOS RIOS, et al.,**

  Defendants.
_____/

**ORDER DENYING DEFENDANT DE LOS RIOS'S MOTION TO EXCLUDE
TESTIMONY OF GOVERNMENT'S EXPERT WITNESS DR. WOHLFEILER
(D.E. 116)**

**THIS CAUSE** is before the Court on Defendant Rene De Los Rios's Motion to Exclude Testimony of Government's Expert Witness ("Motion," D.E. 116), filed on November 17, 2010.[1] On December 28, 2010, the Government filed its response in opposition ("Response," D.E. 135), to which De Los Rios filed a reply ("Reply," D.E. 136) on January 4, 2011. Having considered the Motion, Response, Reply, related pleadings, and the record, the Court finds as follows.

  **I.**   **Background**

On July 19, 2010, De Los Rios, Diaz, and three other co-defendants were charged by indictment with one count of conspiracy to commit health care fraud in violation of 18

---

[1] On November 18, 2010, Defendant Jose Diaz filed a Motion to Adopt and Join De Los Rios's Motion. (See D.E. 117.) Diaz's motion is **GRANTED**.

U.S.C. § 1349 (Count 1) and four counts of submission of false claims in violation of 18 U.S.C. § 287 (Counts 2-5). (See Indictment, D.E. 3.) The Indictment alleges De Los Rios, a licensed physician at an HIV clinic named Metro Med of Hialeah, Corp. ("Metro Med") and others conspired from April 2003 to September 2005 to defraud Medicare by submitting claims for injection and infusion treatments for HIV patients that were medically unnecessary and/or never in fact administered.[2] The conspiracy also involved falsifying medical and billing records as well as paying cash kickbacks to Medicare beneficiaries in exchange for the use of their beneficiary numbers. The four substantive counts charged in the Indictment pertain to claims made to Medicare in September and October 2005 for injections of Procrit, also known as Epoetin alfa injections.

On July 27, 2010, the Government disclosed it intends to offer expert testimony from Dr. Michael Wohlfeiler ("Wohlfeiler"). (See Government's First Response to Standing Discovery Order, D.E. 47 at 4-5.) The Government's discovery response states that:

The substance of Dr. Wohlfeiler's opinions will be as follows:

(1) In the last 10-15 years, since the advent of highly active anti-retroviral therapy ("HAART") which involves treating HIV/AIDS with a combination of oral medications, sometimes referred to as a "cocktail," it is not medically necessary or appropriate to treat HIV/AIDS patients with parenteral therapies such as infusions or injections.

(2) Thrombocytopenia is a disorder in which a patient's blood contains an abnormally low platelet count. Thrombocytopenia can only be diagnosed through a blood test, and cannot be detected through other symptoms alone, such as bleeding. Idiopathic Thrombocytopenic Purpura ("ITP") is a common

---

[2] Diaz was employed as a physician assistant at Metro Med.

2

cause of thrombocytopenia in HIV positive patients.

(3) It is not medically necessary or appropriate to treat thrombocytopenia in HIV/AIDS patients. In general, the proper treatment of thrombocytopenia in HIV/AIDS patients is the treatment of HIV/AIDS itself, as the underlying disease that is causing the thrombocytopenia. Treatment of thrombocytopenia itself is only medically necessary in rare cases where a patient's platelet count falls below clinically significant levels or when the patient is actively bleeding.

(4) Even if treatment for thrombocytopenia itself were appropriate in the uncommon HIV/AIDS case, it would only be appropriate in connection with frequent and regular monitoring of a patient's platelet count through properly conducted laboratory tests. The same is true for the treatment of other blood disorders such as low white cell count and low red cell count. Outside of these parameters, medications such as gamma globulin or immune globulin would not be medically necessary or appropriate. Infusions and injections of these medications are not routinely used in the treatment of HIV/AIDS patients.

(5) Infusion therapy of Rho(D) immune globulin is designed to elevate the platelet level of patients with extremely low blood platelet counts (less than 50,00 per UL). The appropriate dosage of Rho(D) immune globulin is dependent on the patient's body weight.

(6) A course of infusion therapy of Rho(D) immune globulin would typically consist of a four-day course of treatment, with follow-up infusions every 21-30 days for maintenance purposes. There is no medically justifiable reason to provide Rho(D) immune globulin infusions three times a week over a period of several weeks or months, especially in the absence of continual monitoring of the patients' platelet level.

(7) It is not medically necessary or appropriate to treat patients with HIV/AIDS by infusing or injecting them with medications such as WinRho, Filgrastim, and Epoetin.

(8) Medications such as gamma globulin and immune globulin products, Filgrastim, and Epoetin all have potential side effects and contraindications that can cause patient harm. For example, Rho(d) immune globulin (or "WinRho") has been associated with certain specific complications, including hemolytic anemia, kidney disease, and kidney failure.

(Id.)

The Court set this matter for an evidentiary hearing on January 25, 2011. Neither side presented evidence or testimony at the hearing. Accordingly, the Court allowed both sides to present argument after which the Court announced it was denying De Los Rios's Motion with this written order to follow.

## II. De Los Rios's Motion

De Los Rios seeks to exclude Wohlfeiler's testimony on the grounds that it is irrelevant, unduly prejudicial, and would violate his due process rights.[3] The essence of De Los Rios's argument is that Medicare's Local Medical Review Policies ("LMRPs"),[4] and only these policies, govern what is medically necessary for Medicare purposes. According to De Los Rios, the only relevant standard of care for evaluating his actions is that defined by the LMRPs. He also suggests it lacks relevance because Wohlfeiler has not reviewed any of the patient records in this case. He therefore argues Wohlfeiler's testimony is wholly irrelevant. Furthermore, De Los Rios believes Wohlfeiler's testimony would unfairly prejudice him by suggesting to the jury they should convict if they disagree with the standard of care given. Finally, De Los Rios argues that due process bars criminal punishment for

---

[3] De Los Rios concedes Wohlfeiler's qualifications as an expert witness and the reliability of his methodology. De Los Rios therefore does not cite Rule 702 as the basis for excluding Wohlfeiler's testimony but more generally asserts it is irrelevant.

[4] On January 18, 2011, the Court *sua sponte* ordered the Parties to submit the relevant LMRPs for the Court's consideration. (See D.E. 139.) On January 21, 2011, both sides submitted their responses. (See D.E. 140, 143.) The submitted LMRPs correspond to several injection or infusion treatments including: Rho(D), Neupogen, and Procrit.

4

conduct he believes is sanctioned and expressly authorized by the LMRPs. In support, De Los Rios points to Wohlfeiler's exclusion in another Medicare fraud case in this District in United States v. Marrero, Case No. 09-21019.

The Government responds that Medicare's LMRPs are not definitive statements of medical necessity, but billing guidelines introduced to limit the reimbursement of overutilized services. The Government further asserts that Wohlfeiler's testimony that the unnecessary basis for the treatment, and the sheer number of patients prescribed such treatment, is circumstantial evidence of the fraud committed in this case. Moreover, Wohlfeiler is in the process of reviewing patient records from Metro Med including those from the patients designated in Counts 2-5 of the Indictment. With regard to prejudice, the Government contends the Court should not use Rule 403's extraordinary remedy where Wohlfeiler's testimony is highly probative as to Defendants' intent and is not unfairly prejudicial. With regard to due process, the Government argues the LMRPs are not a talisman against a charge of fraud. In support, the Government cites to three cases in this District in which Wohlfeiler's testimony was allowed.

In reply, De Los Rios states, "if the LMRPs serve the purpose of providing guidance as to what Medicare considers medically necessary and therefore reimbursable, the proposed testimony of Dr. Michael Wohlfeiler, which is not LMRP based, is irrelevant at trial." (Reply at 1-2.) De Los Rios also contends that Wohlfeiler's testimony is irrelevant for the additional reason that some of the charged conduct involves falsified diagnoses and treatment

5

that was never provided. Thus, there is no issue regarding whether the allegedly fake treatment was medically necessary or not. As to due process, he reiterates that the Government cannot legally prosecute him for conduct permitted by the LMRPs. In conclusion, De Los Rios further attempts to distinguish those cases cited by the Government in which Wohlfeiler's testimony was permitted.

### III.  Discussion

Rule 702 of the Federal Rules of Evidence, which controls the admission of expert witness testimony, provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702 (2000). The Supreme Court has stated that "[t]he inquiry envisioned by Rule 702 is . . . a flexible one." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 594 (1993). "Many factors will bear on the inquiry," and no "definitive checklist or test" exists. Id. at 593.[5]

---

[5] The Supreme Court in Daubert set forth a non-exclusive checklist for trial courts to use in assessing the reliability of scientific expert testimony. The Daubert factors include: (1) whether the expert's technique or theory can be or has been tested—that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific

In the Eleventh Circuit, the proponent of expert testimony must show that: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." Rink v. Cheminova, Inc., 400 F.3d 1286, 1291-92 (11th Cir. 2005); City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562-63 (11th Cir. 1998) (citing Daubert, 509 U.S. at 589). The burden of laying the proper foundation for expert testimony rests on the party offering the expert, and admissibility must be shown by a preponderance of the evidence. Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

In addition to the Daubert analysis, the Court must apply all of the Federal Rules of Evidence, including 402 and 403, to expert testimony. Allison, 184 F.3d at 1309. "The judge's role is to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." Id. at 1311-12. Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Only relevant evidence is admissible under Rule 402. Finally, pursuant to Rule 403, "[a]lthough

---

community. Daubert, 509 U.S. at 593-94.

relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

At issue is whether Medicare's LMRPs[6] exclusively govern what is considered medically necessary treatment.[7] "In general, an LMRP embodies the majority view of local health care providers regarding the medical necessity of a certain good or service." Arruejo v. Thompson, 2001 WL 1563699 at *4 (E.D.N.Y. 2001). They "are promulgated when a carrier perceives a need to clarify national policy, articulate local policy in the absence of national policy, or respond to data indicating that certain medical services are being overutilized." Id. (internal citations omitted). Medicare's LMRPs "set regional coverage determinations that govern in the absence of or as an adjunct to a national policy." United States v. Prabhu, 442 F. Supp. 2d 1008, 1014 n.4 (D. Nev. 2006) (citing 68 Fed. Reg. 63,692, 63,693 (Nov. 7, 2003) ("As explained in the preamble to the proposed rule, Local Medical

---

[6] LMRPs are now termed "Local Coverage Determinations" or "LCDs." United States v. Prabhu, 442 F. Supp. 2d 1008, 1014 n.4 (D. Nev. 2006). In the interest of consistency, the Court uses the term LMRP.

[7] It is worth noting, the court in United States v. Marrero, Case No. 09-21019-UU (Apr. 16, 2010), explicitly declined to "make a determination regarding the authoritative nature of LMRPs at this time" given its finding that medical necessity was not relevant to the offenses charged in the Indictment. (See D.E. 116-1 at 5 n.2.) That court determined medical necessity was not at issue because 18 U.S.C. § 1349 does not require medical necessity (or the lack thereof) as an element. The court in that case also understood the Government's evidence was related to the defendant's billing Medicare for services that were never provided and submitting claims based on falsified diagnoses.

Review Policies are contractor-specific policies that identify the circumstances under which particular items or services will be (or will not be) considered covered and correctly coded. An LMRP is not controlling authority for ALJs or the Board in the claims appeals process. These guidelines simply help to ensure that similar claims are processed in a consistent manner within those jurisdictions. LMRPs may not conflict with an NCD, but may be written in the absence of, or as an adjunct to, an NCD."). "Once an LMRP is adopted by the carrier, it acts as a filter, or screen, to ensure that only claims meeting the LMRP criteria for medical necessity are paid." Arruejo, 2001 WL 1563699 at *4.

The Court rejects De Los Rios's argument that Medicare's LMRPs exclusively govern whether any given treatment is medically necessary. The LMRPs help establish a framework or guideline for what the local medical community views as potentially appropriate treatment that should be eligible for reimbursement from Medicare. De Los Rios urges a much narrower view. Rather, De Los Rios suggests that whether a treatment is medically necessary depends solely on whether the LMRP authorizes it as a potential treatment and it corresponds with a diagnosis contained in a patient chart. Thus, for example, Florida's Medicare contractor has issued an LMRP with respect to the drug Rho(D) Immune Globulin Intravenous. (See Defendant's LMRPs, D.E. 143-3.) The LMRP states Florida Medicare will consider Rho(D) medically necessary for several conditions including "[f]or the treatment of immune thrombocytopenic purpura ("ITP") for non-splenectomized Rho(D) positive individuals in clinical situations requiring an increase in platelet count to prevent

9

excessive hemorrhage in: . . . Children and adults with ITP secondary to HIV infection." (Id. at 3.) The Government offers that Wohlfeiler will testify that the "[t]reatment of thrombocytopenia itself is only medically necessary in rare cases where a patient's platelet count falls below clinically significant levels or when the patient is actively bleeding." Were the Court to adopt De Los Rios's position, if a patient file indicates the patient suffers from ITP secondary to HIV infection, then the administration of Rho(D) would always be appropriate. In essence, De Los Rios urges the Court to find that as a matter of law the LMRPs exclusively define medical necessity independent of: (1) the circumstances surrounding a patient's actual treatment or (2) whether the medication is rarely used despite being authorized by Medicare. The Court declines to make such a finding.

Additionally, whether or not a given treatment was medically necessary or not is relevant to whether Defendants intended to defraud Medicare. In order to receive reimbursement from Medicare, one must certify that the treatments provided were medically necessary for the beneficiary. See Aruejo, 2001 WL 1563699 at *3 ("carriers may provide coverage only for those services that are 'reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member.'") (quoting 42 U.S.C. § 1395y(a)(1)(A)). Count 1 of the Indictment charges Defendants with conspiracy to commit health care fraud, which penalizes:

> Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice--
> (1) to defraud any health care benefit program; or
> (2) to obtain, by means of false or fraudulent pretenses, representations, or

>promises, any of the money or property owned by, or under the custody or control of, any health care benefit program

18 U.S.C. § 1347.[8] Defendants are charged in Counts 2-5 with violations of 18 U.S.C. § 287 which penalizes making or presenting claims to the United States or any department or agency theroef, "knowing such claim to be false, fictitious, or fraudulent." The Indictment alleges, *inter alia*, that Defendants certified that claims presented to Medicare were medically necessary when in fact they were not. Thus, although the statutes under which Defendants are charged do not contain medical necessity as an element, evidence that the treatment provided was rarely appropriate or necessary would tend to prove that those claims were fraudulent and that Defendants intended to defraud Medicare. Evidence that Defendants billed Medicare with high frequency for medications that should rarely be given and in abnormal doses would assist the trier of fact determine the issue of whether they possessed the requisite *mens rea*. Defendants may offer the LMRPs as evidence during their case-in-chief and/or argue they provide evidence of a lack of intent. They may also use them in their cross-examination of Wohlfeiler to counter the Government's evidence that the treatment provided was not medically necessary or that the extensive billing of such treatment supports an intent to defraud.

Nor is Wohlfeiler's testimony so prejudicial or confusing that it should be excluded on Rule 403 grounds. As discussed above, Wohlfeiler's testimony is relevant to whether or

---

[8] 18 U.S.C. 1349 simply provides that "[a]ny person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

not De Los Rios and his co-defendants intended to defraud Medicare. Furthermore, it is not misleading or confusing to the jury. The Court will instruct the jury on the law in this case. There is also no reason to think the jury will equate this case with a medical malpractice case. De Los Rios is also able to seek the introduction of the LMRPs as evidence and present evidence regarding his defense that the treatment provided was medically necessary pursuant to Medicare's guidelines. While it is correct that a medical provider's services may be medically unnecessary yet not amount to an intent to defraud Medicare, the opposite conclusion may be true under certain circumstances. (But see Marrero, D.E. 116-1 at 9.) The jury will be instructed on the law and is well-equipped to determine the facts including whether the nature of the infusion and injection treatments provided in this case is evidence of an intent to defraud Medicare.

Finally, the Court rejects De Los Rios's due process argument. In essence, De Los Rios suggests that as long as Medicare's voluminous LMRPs list a treatment as medically necessary in a given circumstance, one can never be prosecuted for fraud based upon the administration of that treatment. As stated above, the LMRPs establish the parameters of what treatments Medicare will reimburse. However, the fraudulent submission of claims for treatment that is not necessary is not permitted by the LMRPs. Thus, De Los Rios's due process argument fails. Accordingly, it is **ORDERED AND ADJUDGED** that De Los Rios's Motion to Exclude Testimony of Government's Expert Witness (D.E. 116), is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 1st day of February, 2011.

/s/ Joan A. Lenard
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**